CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 07 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY ROMAN, | Civil Action No.: 7:10-cv-524 |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| SAM'S CLUB/WALMART, et al., | Hon. James C. Turk<br>Senior United States District Judge |
| Defendants. | |

Anthony Roman, a self-professed Christian who applied for a job at the Roanoke Sam's Club, claims that he was discriminated against and not hired because his religious beliefs prohibit his working on Sundays. He seeks relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*

This matter is before the Court on Defendant Sam's Club's[1] Motion for Summary Judgment. ECF No. 67. Also before the Court is Defendant's Motion for Contempt for Plaintiff's Noncompliance with the Court's August 14, 2012 Discovery Order, ECF No. 55, Plaintiff's Motion to Strike, ECF No. 64, Plaintiff's Second Motion to Strike, ECF No. 70, and Plaintiff's Motion for Sanctions, ECF No. 71. The issues have been briefed, the Court heard oral argument on December 19, 2012, and the matter is now ripe for disposition. For the reasons described below, the Motion for Summary Judgment is **GRANTED** and all other motions are **DENIED**.

---

[1] Plaintiff's Complaint incorrectly names "Sam's Club/Walmart" as a Defendant in this case. The correct entity is Sam's East, Inc. The other Defendants named in the Complaint have previously been dismissed, see ECF No. 36, and Sam's East is the only remaining Defendant. For the sake of simplicity, the Court will refer to the Defendant as "Sam's Club" or "Sam's" in this opinion.

1

I.  **FACTS**

In considering a motion for summary judgment, a court must consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 273 (4th Cir. 2008). That being said, the facts are largely undisputed.

On August 19, 2008, Anthony Roman ("Roman" or "Plaintiff") applied for a job at the Roanoke, Virginia Sam's Club using a computer-based job application tool. In that application, he entered his work history and availability. Roman marked on the application that he was available Monday through Friday, 7 am to 7 pm, and Saturday, 7 am to 5 pm.[2] Roman had worked at Kroger—a grocery store with an attached fuel station—for three years, with experience in Produce, Front-End,[3] and Fuel Center responsibilities. Roman's time at Kroger ended abruptly in May 2008 when he "resigned" from his position because of alleged violations by Kroger of Occupational Safety and Health Administration ("OSHA") regulations.

Beverly Grubbs, the Personnel Manager at the Roanoke Sam's Club and the person responsible for conducting the first of three interviews before an employee is hired, reviewed Roman's application and noted that he had experience in positions for which Sam's was currently hiring—Produce and Front-End. Consequently, Grubbs scheduled an interview with Roman. The interview occurred on September 11, 2008.

---

[2] Roman apparently made a mistake on his application with regards to his Saturday work availability. He meant to mark that he was available 7 am to 7 pm but was apparently confused by the use of military time on the computer-based application. See ECF No. 68-3 at 2. He clarified his Saturday availability in his interview. See ECF No. 2-3 at 4. Roman also marked that he was not available to work on Sunday in the calendar grid on one section of the application, but checked a box below the grid indicating that he was available to work on Sundays. See ECF No. 68-3 at 2.

[3] Front-End employees typically bag groceries and work as cashiers or at the customer service desk.

2

For reasons unknown to the Court, Roman tape-recorded his job interview with Beverly Grubbs and attached a transcription of the interview to his Complaint.[4] See ECF No. 2-3. According to the transcript, the interview began with preliminary questions, but before long, Grubbs asked Roman about his work at Kroger.

> Grubbs: Why'd you quit?
> Roman: Ahh, big problems. I'll leave it there.
> Grubbs: Okay, did you have problems with managers or problems with employees, pay, hours, or personal. What?
> Roman: Ahh . . . It's more than . . . It's complicated; it's a complicated situation. . . .
> Grubbs: Okay, umm and you left without having another job. Did you give a notice?
> Roman: Uhh, no.

ECF No. 2-3 at 2-3 (pages 2 and 3 are reversed from their sequential order in the Court's online docket). Roman did not give Grubbs any reason for why he left Kroger, id., though he has since orally advised the Court that it was because of OSHA violations.

Grubbs next asked about Roman's work availability. He stated he could work Monday through Saturday, 7 am to 7 pm, but not on Sunday. Id. at 4. After hearing of this somewhat limited work availability, Grubbs stressed the importance of schedule flexibility to Sam's Club, especially the need for availability on Friday, Saturday, and Sunday since those are the busiest days of the week at Sam's. Id. at 4-5. "Sundays are required. . . . That's just a requirement for working for us." Id. at 5. It was at this point in the interview that Roman mentioned that the reason he requested Sundays off is because "I'm a Christian and we observe Sunday as the Sabbath Day . . . ." Id. He then mentioned that he relies on the bus system and that was why he was unable to work past 7 pm because the last bus leaves at 7:45 pm.[5] Grubbs stated again that

---

[4] Sam's Club advised the Court at oral argument that it has listened to the tape recording and that it does not dispute the accuracy of the transcription. The Court, however, has not heard the recording and relies exclusively on the transcript.

[5] Although the transcript seems to indicate that the reference to the bus system only related to his evening work availability and not to his Sunday work availability, the Court takes judicial notice of the fact that the bus system in Roanoke does not operate on Sundays. See http://www.valleymetro.com/schedules.htm (last visited December 20,

3

she could not guarantee that Roman would have every Sunday off. Id. at 5. She did say that she would pass Roman's information on to the manager, but that she was not optimistic that Sam's would have a position open for Roman. Id. at 6. Roman protested that he had listed 72 available hours of work, but Grubbs responded that Sam's Club required almost complete flexibility, especially on Sundays:

> It won't work with the positions I have open, because all the positions that are open, you have to be able to work Sundays. That's so [sic] every job we have, you have to work Sunday. I work Sunday, everyone works Sundays, we all work Sundays. We work 2 a month, we have to work Sundays. So it's pretty much everyone has to have that open flexibility, for any position that we have open. I'll talk to him and let him know. But, more than likely I'm not gonna have anything that will fit with that. I'm just being honest with you. Okay?

Id. at 6. They then concluded the interview.

Grubbs then forwarded her interview notes, ECF No. 68-1 at 24, along with Roman's application, ECF No. 68-3 at 2, to the assistant manager. ECF No. 68-1, Grubbs Aff. ¶¶ 15, 29-32. In her interview notes, Grubbs noted the "big problems" and "complicated situation" at Kroger, the lack of notice provided upon Roman's resignation, and his lack of work availability on evenings and Sunday. See ECF No. 68-1 at 24. She did not mention in her notes that Roman was Christian or that the reason he could not work on Sunday was because he was Christian. ECF No. 68-1, Grubbs Aff. ¶ 30. She also "did not communicate to any manager that Mr. Roman could not work on Sundays because he observed the Sabbath." Id. Roman did not receive another interview, nor was he ultimately hired at Sam's Club, a result he attributes to religious discrimination.

---

2012) ("There is no service on Sundays . . ."). Both parties would probably have been familiar with this fact and Grubbs may thus have understood Roman's reference to reliance on the bus system to mean he could not work on Sunday only because the bus does not run on Sundays. Construing the facts in the light most favorable to Roman, the Court will assume that the bus reference refers only to evening availability.

4

Roman submitted a grievance to the EEOC, received his right to sue letter on or about August 30, 2010, and he filed suit in this court soon after. See ECF No. 2-1 at 1.

## II. LEGAL STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Summary judgment should be entered if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). The moving party bears the burden to establish either the absence of a genuine issue of material fact or the absence of evidence to support the non-moving party's case. MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 281 (4th Cir. 2008).

## III. ANALYSIS

Liberally construed, Roman's *pro se* complaint pursues two Title VII claims against Sam's Club: a disparate treatment claim and a failure to accommodate claim. See Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996) ("Courts have recognized that employees may utilize two theories in asserting religious discrimination claims. See, e.g., Mann v. Frank, 7 F.3d 1365, 1368-70 (8th Cir. 1993) (analyzing discrimination suit as involving two separate theories). These theories are denominated as the 'disparate treatment' and 'failure to accommodate' theories. Id.").

5

## A. Disparate Treatment Claim

Title VII prohibits religious discrimination for currently employed and prospective employees. See 42 U.S.C. § 2000e(j). In order to recover on his Title VII disparate treatment claim, Roman must establish that Sam's Club treated him differently because of his religion in one of two ways: (1) by producing direct evidence that his religion was a factor in the defendant's decision; or (2) by proffering indirect evidence that could reasonably create an inference of discrimination. Adams v. Univ. of N. Carolina-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011) (quoting Chalmers, 101 F.3d at 1017). Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) (en banc), abrogated on other grounds as recognized in Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc).

If Roman cannot produce direct evidence of discrimination, he must proceed under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To demonstrate a prima facie case of disparate treatment in a failure to hire claim, Roman must show that "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998). "If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Assuming the employer meets this burden of production, 'the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel*

6

*non.*'" Hill, 354 F.3d at 285 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-42 (2000)).

The Court concludes that Roman has not produced direct evidence of discrimination and thus analyzes his claim under the McDonnell Douglas framework. Sam's Club does not dispute the first three elements of Roman's prima facie case, but argues that the circumstances do not give rise to an inference of religious discrimination. The transcript of the interview attached to the Complaint belies this argument. Grubbs' statements leave the distinct impression that Sam's Club would not hire a person who observes Sunday as the Sabbath. "[A]ll the positions that are open, you have to be able to work Sundays. That's so [sic] every job we have, you have to work Sunday. I work Sunday, everyone works Sundays, we all work Sundays. We work 2 a month, we have to work Sundays." ECF No. 2-3 at 6. After Roman informed Grubbs of his religious motivations for not working on Sundays, Grubbs spent nearly the rest of the interview discussing the importance of working on Sunday. Her statement that she was not optimistic that Sam's Club would be able to offer Roman a position came seconds after the above quote in which she reiterated the importance of Sunday work. Based on Grubbs' statements to Roman in the interview, the Court concludes that Roman was rejected for the position under circumstances giving rise to an inference of discrimination and he thus states a prima facie disparate treatment claim.

Since Roman has stated a prima facie claim, the burden of production now shifts to Sam's Club to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." Hill, 354 F.3d at 285. The record is rife with legitimate, nondiscriminatory reasons. Roman had resigned or walked off the job at Kroger a few months prior without giving notice and without another job lined up. When asked about his reasons for resigning from Kroger,

7

Roman answered incompletely at best and evasively at worst. The ominous "big problems" and "complicated situation" between Roman and Kroger could not have inspired confidence in the vision of a bright future for Roman at Sam's Club.

Roman also had limited work availability, irrespective of his availability on Sundays. He stated in the interview that he would need to be off by 7 pm the six days he was available to work. Although he later claimed he could have ridden his bike home, he did not mention that fact to Grubbs in the interview. See ECF No. 2-3 at 4. Even if Roman listed 72 hours of work availability on his application, Sam's Club justifiably prefers the maximum amount of schedule flexibility on the part of its employees and Roman's limited work availability was certain to have hurt his chances of being hired at Sam's Club.

Furthermore, it is uncontroverted by Roman that Grubbs did not make the final decision as to his employment. After Roman's interview with Grubbs, she forwarded her interview notes and Roman's application to the assistant manager, who made the decision not to invite Roman back for the second of three interviews. The interview notes contained Roman's statements about his employment at Kroger and his work availability, but did not mention Roman's religion or the reason he could not work on Sundays. Grubbs also did not verbally communicate these facts to any manager.

Once the defendant has produced a legitimate and nondiscriminatory reason for the failure to hire, "the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non.*" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotation marks and citations omitted). "In other words, the burden shifts back to [Roman] to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for

discrimination.'" Hill, 354 F.3d at 285 (quoting Reeves, 530 U.S. at 143). "[T]he burden to demonstrate pretext 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" Id. (quoting Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). "A plaintiff could accomplish this goal 'by showing that the employer's proffered explanation is unworthy of credence.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007) (quoting Burdine, 450 U.S. at 256).

Viewing the facts in the light most favorable to him, Roman cannot meet the burden of persuading the Court he was the victim of intentional discrimination. While Grubbs' statements in the interview create an inference of discrimination, this inference becomes considerably outweighed when viewed in context. It is undisputed that Roman had problems at Kroger, that he resigned without providing advance notice, that he failed to provide complete answers to Grubbs' questions about his work at Kroger, and that he had limited work availability.

Moreover, Grubbs did not make the hiring decision. She merely conducted the first of three interviews and the independence of the assistant manager mitigated any discriminatory animus displayed by Grubbs. The independence of the decisionmaker is strong evidence of a lack of intentional discrimination. See Hill, 354 F.3d at 286 ("[A]n individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that 'the protected trait . . . actually motivated the employer's decision.' Reeves, 530 U.S. at 141 (internal quotation marks omitted). The protected trait 'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.' Id. (internal quotation marks and alterations omitted); cf. Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (noting that 'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy

the plaintiff's burden' of proving discrimination); Koski v. Standex Int'l Corp., 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria)."). Roman has not disputed the independence of the assistant manager and thus the Court is compelled to conclude that the assistant manager to whom Grubbs submitted her notes and Roman's application was the decisionmaker as to Roman. This decisionmaker declined to offer Roman a second interview without any knowledge of Roman's religion or the reason behind his unavailability for Sunday work.

Because Roman performed poorly in the interview and Sam's Club's uncontroverted evidence demonstrates that the actual decisionmaker acted without any evidence of discrimination, Roman's disparate treatment claim fails. Accordingly, the Court **GRANTS** Sam's Club's Motion for Summary Judgment as to this claim.

### B. Failure to Accommodate Claim

The framework of a failure to accommodate claim is similar to the McDonnell Douglas burden shifting scheme employed in a disparate treatment claim. Roman must first establish a prima facie claim by showing that "'(1) he . . . has a bona fide religious belief that conflicts with an employment requirement; (2) he . . . informed the employer of this belief; and (3) he [was not hired] for failure to comply with the conflicting employment requirement.'" Chalmers, 101 F.3d at 1019. "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." Id.

Roman's failure to accommodate claim fails because he cannot establish the third element—that he was not hired because he could not work on Sundays. The Court has already

10

Case 7:10-cv-00524-JCT   Document 79   Filed 01/07/13   Page 10 of 13   Pageid#: 816

the plaintiff's burden' of proving discrimination); Koski v. Standex Int'l Corp., 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria)."). Roman has not disputed the independence of the assistant manager and thus the Court is compelled to conclude that the assistant manager to whom Grubbs submitted her notes and Roman's application was the decisionmaker as to Roman. This decisionmaker declined to offer Roman a second interview without any knowledge of Roman's religion or the reason behind his unavailability for Sunday work.

Because Roman performed poorly in the interview and Sam's Club's uncontroverted evidence demonstrates that the actual decisionmaker acted without any evidence of discrimination, Roman's disparate treatment claim fails. Accordingly, the Court **GRANTS** Sam's Club's Motion for Summary Judgment as to this claim.

### B. Failure to Accommodate Claim

The framework of a failure to accommodate claim is similar to the McDonnell Douglas burden shifting scheme employed in a disparate treatment claim. Roman must first establish a prima facie claim by showing that "'(1) he . . . has a bona fide religious belief that conflicts with an employment requirement; (2) he . . . informed the employer of this belief; and (3) he [was not hired] for failure to comply with the conflicting employment requirement.'" Chalmers, 101 F.3d at 1019. "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." Id.

Roman's failure to accommodate claim fails because he cannot establish the third element—that he was not hired because he could not work on Sundays. The Court has already

discussed the legitimate reasons Sam's Club has offered for not hiring Roman and the Court relies on those reasons for this claim as well.

One potential obstacle to the Court's reliance on these legitimate reasons is the Fourth Circuit's apparent prohibition on doing so, but on closer examination, there is no actual prohibition on these facts. In Chalmers, in discussing the difference between the disparate treatment theory and the failure to accommodate theory, the Fourth Circuit made this observation:

> In a religious accommodation case, an employee can establish a claim even though she cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for her discharge. This is because an employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge.
> For example, an employee who is terminated for refusing to work on Sundays can maintain an accommodation claim even if other nonreligious employees were also fired for refusing Sunday work, and even though the employer's proffered reason for the discharge—the refusal to perform required Sunday work—is legitimate and nondiscriminatory (because the Sunday work rule applies to all employees, regardless of religion).

101 F.3d at 1018. A close reading of this passage makes clear that courts are not prohibited from considering legitimate, non-discriminatory reasons *in toto* in a failure to accommodate claim, but are barred from considering those reasons as they relate to the requested accommodation. The provided example from Chalmers makes this clear. That is, the legitimate and nondiscriminatory reason for discharge referred to in the example was the refusal to perform Sunday work. This behavior also formed the basis for the requested accommodation. Thus, in a failure to accommodate claim, an employer could not argue that the refusal to perform the Sunday work was a legitimate and nondiscriminatory reason for discharging an employee who had requested Sunday off for religious reasons. This is because employers have an affirmative duty to accommodate under Title VII. Id. ("[A]n employer must, to an extent, actively attempt to

11

accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge.").

Nothing, however, in Chalmers requires that employers overlook other legitimate reasons for discharge simply because the employee has made a request for religious accommodation. Under this interpretation of the language in Chalmers, an employer could properly discharge an employee with a pending religious accommodation request for absenteeism, poor work quality, or threatening another employee, but not because the employee refused to perform the action that was the basis of the accommodation request.

The alternate interpretation of this passage from Chalmers—one that would completely prohibit reliance on legitimate, non-discriminatory reasons, even those unrelated to the requested accommodation—would have absurd consequences. In a hiring situation, an employer would be required to hire, and then accommodate, an unqualified applicant solely because that applicant mentioned a religious reason for accommodation in the interview.

In Roman's case, the Court cannot consider Roman's unavailability for Sunday work, but it is free to consider his abrupt resignation from Kroger, incomplete interview questions, limited evening availability, and the independence of the decisionmaker.[6] Considering these legitimate and undisputed reasons Sam's Club has advanced for not hiring Roman, the Court concludes that he cannot establish that he was not hired because he could not work on Sunday. Because Roman cannot state a prima facie case on his failure to accommodate claim, the Court **GRANTS** the Motion for Summary Judgment on this claim.

---

[6] The assistant manager's consideration of Roman's unavailability on Sunday, even without knowing the religious motivation for that unavailability, also violated the quoted language from Chalmers. The other evidence in the record—including the decisionmaker's consideration of the Kroger resignation, incomplete interview questions, and evening availability—provides a sufficient basis for the Court to conclude that Roman cannot satisfy the third element of the test.

12

## IV. OTHER MOTIONS

Also before the Court are Defendant's Motion for Contempt for Plaintiff's Noncompliance with the Court's August 14, 2012 Discovery Order, ECF No. 55, Plaintiff's Motion to Strike, ECF No. 64, Plaintiff's Second Motion to Strike, ECF No. 70, and Plaintiff's Motion for Sanctions. ECF No. 71. The Court has thoroughly examined the motions and for good cause, these motions are **DENIED**.

## V. CONCLUSION

The Court grants the Motion for Summary Judgment in its entirety. All other motions are denied. An appropriate Order shall issue this day.

ENTER: This 7th day of January, 2013.

_____
Hon. James C. Turk
Senior United States District Judge